THE ZWERDLING LAW FIRM, LLP
Heidi Holmquist Wells (SBN 266307)
937 6th Street, Eureka, CA 95501
Telephone: (707) 798-6211
Fax: (707) 798-6240
hhwells@zwerdlinglaw.com

Attorney for Plaintiffs
A.C., C,C., D.C., T.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| A.C. through Guardian ad litem Jacquelynn Snyder, C.C. through Guardian ad litem Jennifer Murrell, D.C. through Guardian ad litem Jennifer Murrell, T.C. through Guardian ad litem Jennifer Murrell,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, MOISES CORNEJO MERCADO, EVAN BEECHEL, JOSEPH RODES, MICHAEL GRIFFIN, and DOES 1 to 20,<br>Defendants. | Case No.: 4:22-CV-04804-HSG<br><br>**FIRST AMENDED CIVIL COMPLAINT FOR WRONGFUL DEATH DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

This action arises from the officer-involved shooting of CHARLES CHIVRELL, a mentally-ill man who was followed as he walked along public roadways by law enforcement officers from the California Highway Patrol and ARCATA POLICE DEPARTMENT. ARCATA POLICE DEPARTMENT Sergeant BRIAN HOFFMAN made the decision to shoot CHARLES CHIVRELL with pepperball projectiles, without warning, justification, or any present or immediate threat. CHARLES CHIVRELL responded by running for cover. Seconds after the pepperball projectiles were fired, California Highway Patrol Officer MICHAEL GRIFFIN fired a bullet from a rifle, striking CHARLES

1

1    CHIVRELL in the back of the head, killing him.

2

3                          **JURISDICTION & VENUE**

4    1.          This Court has original jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that

5              they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to

6              address deprivations, under color of state authority, of rights, privileges, and immunities secured

7              by the United States Constitution). This Court has supplemental jurisdiction of the state law

8              claims under 28 U.S.C. § 1367.

9    2.          Venue is proper in the United State District Court for the Northern District of California

10             pursuant to 28 U.S.C. § 1391(b) because the Plaintiffs and Defendants are located in the Northern

11             District of California and because many of the acts and/or omissions described herein occurred in

12             the Northern District of California.

13   3.          Intradistrict venue is proper in the Eureka Division of the United State District Court for

14             the Northern District of California, pursuant to N.D. Cal. Civ. L.R. 3-2(f), because the claims

15             asserted herein arise from acts and/or omissions which occurred in the County of Humboldt,

16             California.

17                              **EXHAUSTION**

18   4.          On February 17, 2022, all Plaintiffs submitted government claims to the CITY OF

19             ARCATA and ARCATA POLICE DEPARTMENT concerning the claims alleged in this action,

20             pursuant to Cal. Gov. Code § 910 *et seq*. On February 24, 2022, the CITY OF ARCATA

21             submitted a "Rejection of Claim," pursuant to Cal. Gov. Code § 913(b).

22   5.          On February 24, 2022, all Plaintiffs submitted a government claim to the STATE OF

23             CALIFORNIA pursuant to Cal. Gov. Code § 910 *et seq*. On July 19, 2022, the STATE OF

24             CALIFORNIA submitted a "Rejection of Claim" pursuant to Cal. Gov. Code § 913(b).

25                                **PARTIES**

26   6.          Plaintiff A.C. appears by and through guardian ad litem Jacquelyn Snyder. Plaintiff A.C.

27             is a resident of the County of Humboldt, California. Plaintiff A.C. is the biological child of

28             CHARLES CHIVRELL. Plaintiff A.C. brings this action in their individual capacity.

                                    2

7.     Plaintiff C.C appears by and through guardian ad litem Jennifer Murrell. Plaintiff C.C. is a resident of the County of Humboldt, California. Plaintiff C.C. is the biological child of CHARLES CHIVRELL. Plaintiff C.C. brings this action in their individual capacity.

8.     Plaintiff D.C appears by and through guardian ad litem Jennifer Murrell. Plaintiff D.C. is a resident of the County of Humboldt, California. Plaintiff C.C. is the biological child of CHARLES CHIVRELL. Plaintiff D.C. brings this action in their individual capacity.

9.     Plaintiff T.C appears by and through guardian ad litem Jennifer Murrell. Plaintiff T.C. is a resident of the County of Humboldt, California. Plaintiff T.C. is the biological child of CHARLES CHIVRELL. Plaintiff T.C. brings this action in their individual capacity.

10.    Defendant CITY OF ARCATA is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant CITY OF ARCATA is located in the County of Humboldt, California.

11.    Defendant ARCATA POLICE DEPARTMENT is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant ARCATA POLICE DEPARTMENT is located in the County of Humboldt, California.

12.    Defendant BRIAN AHEARN is, and at all times material herein was, a law enforcement officer and the Police Chief of Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT, acting within the scope of his employment. Defendant BRIAN AHEARN is sued in his individual capacity.

13.    Defendant BRIAN HOFFMAN is, at all times material herein was, a law enforcement officer employed by Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT, acting within the scope of that employment. Defendant BRIAN HOFFMAN is sued in his individual capacity.

14.    Defendant JOSEPH RODES is, at all times material herein was, a law enforcement officer employed by Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT, acting within the scope of that employment. Defendant JOSEPH RODES is sued in his individual capacity.

15.    Defendant EVAN BEECHEL is, at all times material herein was, a law enforcement officer employed by Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT,

3

1    acting within the scope of that employment. Defendant EVAN BEECHEL is sued in his

2    individual capacity.

3    16.      STATE OF CALIFORNIA is a "public entity" within the definition of Cal. Gov. Code §

4    811.2.

5    17.      CALIFORNIA HIGHWAY PATROL is a "public entity" within the definition of Cal.

6    Gov. Code § 811.2.

7    18.      Defendant MICHAEL GRIFFIN is, at all times material herein was, a law enforcement

8    officer employed by STATE OF CALIFORNIA and CALIFORNIA HIGHWAY PATROL,

9    acting within the scope of that employment. Defendant MICHAEL GRIFFIN is sued in his

10   individual capacity.

11   19.      Defendant MOISES CORNEJO MERCADO is, at all times material herein was, a law

12   enforcement officer employed by the STATE OF CALIFORNIA and CALIFORNIA HIGHWAY

13   PATROL, acting within the scope of that employment. Defendant MOISES CORNEJO

14   MERCADO is sued in his individual capacity.

15   20.      Defendants DOE 1 to 20 are and/or were agents or employees of Defendants CITY OF

16   ARCATA and ARCATA POLICE DEPARTMENT, acting within the scope of that employment

17   and under color of state law. Defendants DOE 1 to 20's true and correct names and identities are

18   not currently known. Defendants DOE 1 to 20 are sued by their fictitious names and their true and

19   correct names and identities will be substituted when ascertained.

20

21                                      **GENERAL ALLEGATIONS**

22   21.      At all times relevant herein, all wrongful acts described below were performed under

23   color of state law and/or in concert with or on behalf of those acting under the color of state law.

24                                **Charles Chivrell's Mental Health**

25   22.      At the time of his death, CHARLES CHIVRELL was a 35-year-old disabled person who

26   struggled with mental health issues during the course of his life, including schizophrenia and

27   substance use disorder, up to and including the date of his death on September 9, 2021.

28   23.      CHARLES CHIVRELL's mental health issues substantially limited major life activities,

                                                    4

including his ability to care for himself, concentrate, think, and communicate. For example, CHARLES CHIVRELL's mental health issues caused him to become easily confused, defensive, agitated, and frustrated; to exhibit stress, fear, anxiety, and paranoia; to have difficulty processing relayed information and verbalizing thoughts, feelings, and intentions. CHARLES CHIVRELL was known to act irrationally when exhibiting symptoms of his mental illness.

24.     Substance use disorder and schizophrenia are both mental illnesses listed in the Diagnostic and Statistical Manual of Mental Disorders Volume Five.

**Law Enforcement's Contact with Charles Chivrell Prior to his Death**

25.     On September 9, 2021, around 10:45 a.m., CHARLES CHIVRELL was walking on a road in a rural and unincorporated area of the County of Humboldt, near the city of Arcata, California.

26.     At this time, CHARLES CHIVRELL was experiencing and exhibiting symptoms of his mental illness, including acting irrationally, agitated, confused, and speaking in a way that did not make sense.

27.     CHARLES CHIVRELL was walking along a roadway carrying a briefcase and had a firearm holstered on his side.

28.     A report of a man walking on the roadway with a gun in his holster was received by law enforcement agencies.

29.     Law enforcement officers from the California Highway Patrol, Defendants MICHAEL GRIFFIN and MOISES CORNEJO MERCADO, responded to the dispatch. Defendant MOISES CORNEJO MERCADO was driving a patrol vehicle and Defendant MICHAEL GRIFFIN was the front passenger.

30.     Defendants MICHAEL GRIFFIN and MOISES CORNEJO MERCADO located CHARLES CHIVRELL walking alone and peacefully with a gun in a holster along the roadway of Miller Lane.

31.     The roadway of Miller Lane did not contain sidewalks on which CHARLES CHIVRELL could walk. Miller Lane is bordered by pastureland and is not a residential area.

32.     One of the officers commanded CHARLES CHIVRELL to stop walking, drop the briefcase he held in his hand, and put his "hands up."

5

33.     CHARLES CHIVRELL complied by raising his arms in the air.

34.     CHARLES CHIVRELL stated that he was exercising his constitutional rights and that he was going to McKinleyville.

35.     CHARLES CHIVRELL walked away in the direction away from Defendants MICHAEL GRIFFIN and MOISES CORNEJO MERCADO further down the roadway, turning northbound onto Mad River Road, which is a very rural area surrounded by mostly pastureland.

36.     Defendants MOISES CORNEJO MERCADO and MICHAEL GRIFFIN followed in their patrol vehicles slowly behind CHARLES CHIVRELL, as he continued to walk away along the roadway. MOISES CORNEJO MERCADO stopped the patrol car behind CHARLES CHIVRELL.

37.     Defendants MOISES CORNEJO MERCADO and MICHAEL GRIFFIN aggressively confronted CHARLES CHIVRELL, by repeatedly yelling commands and orders, as CHARLES CHIVRELL continued walking away from the officers.

38.     Defendant MICHAEL GRIFFIN asked CHARLES CHIVRELL where he was going, and CHARLES CHIVRELL again responded that he was going to McKinleyville.

39.     Defendants MICHAEL GRIFFIN and MOISES CORNEJO MERCADO yelled commands at CHARLES CHIVRELL and demanded that he stop walking, including threatening CHARLES CHIVRELL to not be "stupid," that there would be a "problem" if he did not stop, and asking "how do you think this is going to end?"

40.     Defendants MOISES CORNEJO MERCADO and MICHAEL GRIFFIN's conduct towards CHARLES CHIVRELL as they followed him down the road exacerbated the symptoms of CHARLES CHIVRELL's mental illness, including but not limited to the following:

41.     Strong and unrelenting fear the officers intended to harm him,

42.     Inappropriate behavior for a given situation,

43.     Abnormal frustration in new or unforeseen circumstances, inappropriate behavior in dealing with a situation,

44.     Belief in thoughts or ideas that are not based in reality.

45.     Defendants MOISES CORNEJO MERCADO and MICHAEL GRIFFIN knew or should

6

1   have known that their conduct exacerbated symptoms of CHARLES CHIVRELL's mental
2   illnesses.

3   46.      Defendant ARCATA POLICE DEPARTMENT's police officers Defendant JOSEPH
4   RODES and Alexander Bonaparte arrived in separate patrol vehicles and followed behind the
5   patrol vehicle driven by Defendant MOISES CORNEJO MERCADO.

6   47.      Defendants MOISES CORNEJO MERCADO and JOSEPH RODES and Alexander
7   Bonaparte stalked CHARLES CHIVRELL in their patrol vehicles for approximately one mile.

8   48.      CHARLES CHIVRELL continued to walk away from officers along the roadway, with
9   the patrol vehicles following slowly behind him.

10  49.      Defendant ARCATA POLICE DEPARTMENT's police officer Defendant EVAN
11  BEECHEL joined the officers in separate patrol vehicle.

12  50.      Defendants MICHAEL GRIFFIN, JOSEPH RODES, and EVAN BEECHEL armed
13  themselves with large rifles, which they displayed and pointed at CHARLES CHIVRELL, who
14  was non-threatening and walking in the direction away from the officers.

15  51.      Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, and MOISES
16  CORNEJO MERCADO aggressively confronted CHARLES CHIVRELL by repeatedly yelling
17  commands and orders, as CHARLES CHIVRELL continued walking away from the officers.

18  52.      The officers' aggressive commands and persistent stalking continued for approximately
19  17 minutes and a distance of approximately one mile.

20  53.      Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, and MOISES
21  CORNEJO MERCADO's conduct exacerbated symptoms of CHARLES CHIVRELL's mental
22  illness, including increasing his fear and anxiety that the officers intended to harm him.

23  54.      Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES
24  CORNEJO MERCADO and DOE 1-10 knew or should have known that their conduct
25  exacerbated symptoms of CHARLES CHIVRELL's mental illnesses, causing him to become
26  increasingly agitated.

27  55.      CHARLES CHIVRELL repeatedly asked the officers to leave him alone and informed the
28  officers that he did not want to be followed.

7

56.     Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO and DOE 1-10 ignored CHARLES CHIVRELL's requests and made an affirmative decision to continue shouting commands and stalking him.

57.     CHARLES CHIVRELL continuously attempted to remove himself from the encounter by slowly walking in the direction away from the officers.

58.     CHARLES CHIVRELL repeatedly asked Defendants JOSEPH RODES, MICHAEL GRIFFIN, EVAN BEECHEL and MOISES CORNEJO MERCADO to leave him alone and informed the officers that he did not want to be followed.

59.     Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO and DOE 1-10ignored CHARLES CHIVRELL's requests and made an affirmative decision to continue shouting commands and stalking him.

60.     CHARLES CHIVRELL continuously attempted to remove himself from the encounter by walking in the direction away from Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO and DOE 1-10. CHARLES CHIVRELL stated: "I'm going to McKinleyville. Meet me there."

61.     Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO and DOE 1-10 violated the policies and procedures required by California Peace Officer Standards and Training ("POST") and California Highway Patrol's Highway Patrol Manual, including Policy 100.69, Chapter 14 ("Crisis Intervention"). During the time they were following CHARLES CHIVRELL, Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO and DOE 1-10 failed to utilize appropriate procedures for communicating and confronting persons suffering from mental illness and did not engage in de-escalation tactics as outlined in the CHP Crisis Intervention Training Manual, including, but not limited to the following: The "T.A.C.T" system, The "R.E.A.D" system, The "A.B.C" system

62.     Defendants JOSEPH RODES and EVAN BEECHEL and DOE 1-10 violated the policies and procedures required by California POST and Defendant ARCATA POLICE DEPARTMENT's Policy Manual, including Policy 370 ("Communications with Persons with

8

Disabilities") and Policy 466 ("Crisis Intervention Incidents").

## The Plan to Shoot Charles Chivrell with a Rifle

63. Defendant ARCATA POLICE DEPARTMENT's sergeant Defendant BRIAN HOFFMAN arrived at the scene. Defendant BRIAN HOFFMAN was an on-scene supervisor and the only supervisor on scene that day.

64. Defendant BRIAN HOFFMAN violated the policies and procedures required by California POST and Defendant ARCATA POLICE DEPARTMENT's Policy Manual, including Policy 370 ("Communications with Persons with Disabilities") and Policy 466 ("Crisis Intervention Incidents"). During the time he was following CHARLES CHIVRELL, Defendant BRIAN HOFFMAN failed to utilize appropriate procedures for communicating and confronting persons suffering from mental illness and did not engage in de-escalation tactics as outlined in the CHP Crisis Intervention Training Manual, including, but not limited to the following: The "T.A.C.T" system, The "R.E.A.D" system, The "A.B.C" system.

65. Defendant BRIAN HOFFMAN armed himself with a rifle capable of shooting pepperball projectiles.

66. Defendant JOSEPH RODES told Defendant BRIAN HOFFMAN when he arrived at the scene: "He's got a pistol on his hip, in a holster."

67. Defendant BRIAN HOFFMAN asked: "Has he brought it out yet?"

68. Defendant JOSEPH RODES responded: "Nope. It's just in the holster."

69. Defendant BRIAN HOFFMAN asked: "What's he saying?"

70. Defendant JOSEPH RODES responded: "You know, it's his right to bear arms. A lot of stuff like that. He hasn't made any violent gestures, or anything like that. But he's obviously refused to stop and talk to us, multiple times."

71. Defendant BRIAN HOFFMAN spoke with Defendants MOISES CORNEJO MERCADO and MICHAEL GRIFFIN, who were located in the patrol vehicle closest to CHARLES CHIVRELL.

72. Defendant MICHAEL GRIFFIN told Defendant BRIAN HOFFMAN that he should shoot CHARLES CHIVELL with the pepperball rifle, while Defendant MICHAEL GRIFFIN provided

9

1    lethal cover with his rifle.

2    73.    Defendant MOISES CORNEJO MERCADO stated that he would maneuver his patrol

3    vehicle closely behind CHARLES CHIVRELL and, when Defendant BRIAN HOFFMAN felt he

4    was close enough, Defendant BRIAN HOFFMAN could deploy the pepperball rifle.

5    74.    Defendants BRIAN HOFFMAN, MICHAEL GRIFFIN, and MOISES CORNEJO

6    MERCADO had no plan as to what they were going to do after shooting CHARLES CHIVRELL

7    with the pepperballs.

8    75.    Defendant BRIAN HOFFMAN did not consult with any professionals or superiors about

9    the plan to shoot at CHARLES CHIVRELL unprovoked, which had been suggested to him by

10    Defendants MICHAEL GRIFFIN and MOISES CORNEJO MERCADO.

11    76.    Defendant BRIAN HOFFMAN approached Defendants JOSEPH RODES and EVAN

12    BEECHEL, who were located immediately behind the patrol vehicle driven by Defendant

13    MOISES CORNEJO MERCADO.

14    77.    Defendant BRIAN HOFFMAN told Defendants JOSEPH RODES and EVAN

15    BEECHEL: "Guys, we're going to roll up. Get close enough. Make sure we got lethal coverage.

16    I'm just going to unload on him."

17    78.    Defendant JOSEPH RODES responded: "Copy that."

18    79.    Defendant EVAN BEECHEL responded: "Okay."

19    80.    Defendants JOSEPH RODES and EVAN BEECHEL each had the opportunity and ability

20    to intervene and object to Defendant BRIAN HOFFMAN's stated intent to shoot CHARLES

21    CHIVRELL but failed to do so.

22    81.    Defendant JOSEPH RODES commented to Defendant EVAN BEECHEL, outside of the

23    presence of his supervisor, Defendant BRIAN HOFFMAN: "Well, this is interesting."

24    82.    Defendant EVAN BEECHEL stated: "I almost feel like I might ditch my rifle. Because

25    we're going to have to go hands-on, right after he pepperballs him."

26    83.    Defendant BRIAN HOFFMAN decided that he would fire his pepperball rifle at

27    CHARLES CHIVRELL, while other officers stood at the ready with alternative force options,

28    including deadly force options.

10

The Officer-Involved Shooting of Charles Chivrell

84.    Defendant BRIAN HOFFMAN rode in the passenger seat of the patrol vehicle driven by Defendant MOISES CORNEJO MERCADO, with Defendant MICHAEL GRIFFIN sitting in a rear passenger seat.

85.    Defendant MOISES CORNEJO MERCADO slowly drove the patrol vehicle behind CHARLES CHIVRELL, as he walked in the direction away from the officers.

86.    Defendant BRIAN HOFFMAN instructed Defendant MOISES CORNEJO MERCADO: "Scoot up about 10 more feet. I'm just going to start firing."

87.    Defendant MOISES CORNEJO MERCADO complied with Defendant BRIAN HOFFMAN's instruction.

88.    Defendants MICHAEL GRIFFIN and MOISES CORNEJO MERCADO each had the opportunity and ability to intervene and protest Defendant BRIAN HOFFMAN's stated intent to shoot CHARLES CHIVRELL but failed to do so.

89.    Defendant MOISES CORNEJO MERCADO slowly drove the patrol vehicle behind CHARLES CHIVRELL, before stopping several yards behind CHARLES CHIVRELL.

90.    Defendant BRIAN HOFFMAN exited the patrol vehicle, using the patrol vehicle's opened passenger door as cover.

91.    Defendants BRIAN HOFFMAN and MICHAEL GRIFFIN pointed their rifles at CHARLES CHIVRELL.

92.    CHARLES CHIVRELL had his back to the officers and was walking in the direction away from the officers in a non-threatening manner, when Defendants BRIAN HOFFMAN and MICHAEL GRIFFIN pointed their rifles at CHARLES CHIVRELL.

93.    Defendant BRIAN HOFFMAN said nothing to CHARLES CHIVRELL prior to firing his rifle, including failing to provide any warning.

94.    Defendant BRIAN HOFFMAN fired several pepperball rounds at CHARLES CHIVRELL's back.

95.    CHARLES CHIVRELL was struck and injured by several pepperball rounds fired by Defendant BRIAN HOFFMAN.

11

96.     Pursuant to Defendant ARCATA POLICE DEPARTMENT's policy manual, "Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, but is not limited to, the discharge of a firearm.

97.     Pursuant to Defendant ARCATA POLICE DEPARTMENT's policy manual 308.7, "as with other control devices, oleoresin capsicum (OC) spray and pepper projectiles may be considered for use to bring under control an individual or groups of individuals who are engaging in, or are about to engage in violent behavior. Pepper projectiles and OC spray should not, however, be used against individuals or groups who merely fail to disperse or do not reasonably appear to present a risk to the safety of officers or the public."

98.     Pursuant to Defendant ARCATA POLICE DEPARTMENT's policy manual 308.7.2, "pepper projectiles are plastic spheres that are filled with a derivative of OC powder. Because the compressed gas launcher delivers the projectiles with enough force to burst the projectiles on impact and release the OC powder, the potential exists for the projectiles to inflict injury if they strike the head, neck, spine or groin. Therefore, personnel using a pepper projectile system should not intentionally target those areas, except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others."

99.     Pursuant to Defendant ARCATA POLICE DEPARTMENT's policy manual 466.2, "The Arcata Police Department is committed to providing a consistently high level of service to all members of the community and recognizes that persons in crisis may benefit from intervention. The Department will collaborate, where feasible, with mental health professionals to develop an overall intervention strategy to guide its members' interactions with those experiencing a mental health crisis. This is to ensure equitable and safe treatment of all involved."

100.    Pursuant to Defendant ARCATA POLICE DEPARTMENT's policy manual 466.8, "A supervisor should respond to the scene of any interaction with a person in crisis. Responding supervisors should:

101.    Attempt to secure appropriate and sufficient resources.

102.    Closely monitor any use of force, including the use of restraints, and ensure that those subjected to the use of force are provided with timely access to medical care (see the Handcuffing

12

and Restraints Policy).

103.     Consider strategic disengagement. Absent an imminent threat to the public and, as circumstances dictate, this may include removing or reducing law enforcement resources or engaging in passive monitoring.

104.     Pursuant to California Highway Patrol Manual, Chapter 1, Use of Force, Intermediate Force: "An officer is justified in using intermediate force when the subject presents an immediate threat of harm to the officer(s) or others and the use of such force is objectively reasonable under the totality of the circumstances. Intermediate force includes, but is not limited to, electronic control device, impact weapons, aerosol subject restraint, and kinetic energy munitions."

105.     In deploying the pepperball rounds in the manner he did in this case, Defendant BRIAN HOFFMAN violated the policies and procedures required by California POST and Defendant ARCATA POLICE DEPARTMENT's Policy Manual, including Policy 300 ("Use of Force") as listed in Paragraph Numbers 91-93, Policy 370 ("Communications with Persons with Disabilities"), and Policy 466 ("Crisis Intervention Incidents").

106.     Defendant BRIAN HOFFMAN's deployment of the pepperball projectiles inappropriately and unnecessarily escalated the officers' confrontation with CHARLES CHIVRELL.

107.     At the time the pepperballs were shot, there was no immediate threat of harm to officers.

108.     Defendant BRIAN HOFFMAN's deployment of the pepperball projectiles was tactically inappropriate, as the pepperball residue was carried downwind and back towards the officers.

109.     CHARLES CHIVRELL was fearful of the projectiles fired at him and believed his life was being unlawfully threatened.

110.     CHARLES CHIVRELL dropped the briefcase he held in his hand and ran for cover away from the projectiles being fired and the officers.

111.     CHARLES CHIVRELL ran several feet from the location at which he was first struck by pepperball projectiles fired by Defendant BRIAN HOFFMAN.

112.     Defendant BRIAN HOFFMAN continued to fire pepperball projectiles at CHARLES CHIVRELL, as he ran away towards cover.

113.     Defendant MICHAEL GRIFFIN fired a bullet from his rifle at the back of CHARLES

13

CHIVRELL's head.

114.     CHARLES CHIVRELL was struck on the side of the head by the bullet fired by
         Defendant MICHAEL GRIFFIN.

115.     The bullet fired by Defendant MICHAEL GRIFFIN entered CHARLES CHIVRELL's
         head through the left cheek and exited through the right posterior neck. The bullet traveled
         through the left half of the maxillary bone and dislodged several upper left posterior teeth and
         bone fragments, including through CHARLES CHIVRELL's oropharynx, right posterior tongue,
         and epiglottis, which damaged right external and internal carotid arteries and jugular vein.

116.     CHARLES CHIVRELL immediately fell to the ground after the bullet struck his head.

117.     CHARLES CHIVRELL was transported to a hospital and died within 35 minutes.

118.     CHARLES CHIVRELL's cause of death is identified as: "Gunshot wound to head to the
         head and neck."

119.     No mental health, SWAT, or crisis response resources of any kind were contacted by any
         Defendant during the course of this incident.

## POLICY, TRAINING, AND CUSTOM ALLEGATIONS

120.     Defendant BRIAN AHEARN is, and at all times material herein was, a final policy-
         making authority for Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT.
         *See* Cal. Gov. Code § 38630(a); Defendant ARCATA POLICE DEPARTMENT's Policy
         Manual, Policy 106.3 ("Authority") and Policy 200.3 ("Command Protocol"). Defendant BRIAN
         AHEARN has been employed as Police Chief of Defendants CITY OF ARCATA and ARCATA
         POLICE DEPARTMENT from November 2018 to present.

121.     Defendants DOE 11 to 20 are/were final policymaking authorities for Defendants CITY
         OF ARCATA, ARCATA POLICE DEPARTMENT, based on a delegation of authority.

122.     Defendants DOE 11 to 20 are/were final policymaking authorities for Defendants CITY
         OF ARCATA, ARCATA POLICE DEPARTMENT, STATE OF CALIFORNIA, and/or
         CALIFORNIA HIGHWAY PATROL, based on a delegation of authority. Defendants DOE 11 to
         20 are, and at all times material herein were, responsible for the creation, implementation, and

14

maintenance of policies, customs, and procedures governing Defendants ARCATA POLICE DEPARTMENT and/or CALIFORNIA HIGHWAY PATROL's officers, including Defendants BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and/or DOE 1 to 10. 110. Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, and DOE 11 to 20 maintained inadequate policies or customs of training, supervision, and discipline of officers under their command related to confrontations with persons experiencing or suffering from documented or apparent mental health crises.

123.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, and DOE 11 to 20 knew or should have known that a substantial number of contacts had occurred between officers under their command and persons wherein force has been applied involved mentally ill and/or substance-impaired persons who do not respond in the way persons who are not mentally ill do to orders, commands, aggressive and direct language, and escalating force. Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, and DOE 11 to 20 regularly receive calls for assistance in connection with persons undergoing mental health crises and, as a result, police officers under their command are on the front lines in dealing with persons with mental health problems, such as CHARLES CHIVRELL.

124.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, and DOE 11 to 20's failure adequately to train, supervise, or discipline police officers under their command, including Defendants BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 10, was a moving force behind the use of unreasonable and excessive force against persons with mental disabilities or substance impairment, including CHARLES CHIVRELL.

125.    On information and belief, BRIAN AHEARN implicitly ratified the conduct of his subordinates in relation to the conduct alleged by refusing to investigate the officer-involved

15

1   death of Charles Chivrell, including the conduct of Sergeant Hoffman, Officer Rodes, and Officer

2   Beechel.

3   126.    On information and belief, in response to APD's receipt of citizens' complaints, BRIAN

4   AHEARN indefinitely suspended the investigation, in violation of Cal. Pen. Code § 832.5(a)(1)

5   and APD's Policy 1020 (Personnel Complaints).

6   127.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN

7   AHEARN and DOE 11 to 20 knew or should have known that a substantial number of contacts

8   had occurred between officers under their command and persons wherein force has been applied

9   involved mentally ill and/or substance-impaired persons who do not respond in the way persons

10  who are not mentally ill do to orders, commands, aggressive and direct language, and escalating

11  force. Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN

12  and DOE 11 to 20 regularly receive calls for assistance in connection with persons undergoing

13  mental health crises and, as a result, police officers under their command are on the front lines in

14  dealing with persons with mental health problems, such as CHARLES CHIVRELL.

15  128.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN

16  AHEARN, and DOE 11 to 20 failed to promulgate specific policies and customs and to train

17  officers under their command in the application of necessary policies, including those prescribed

18  by the California POST, Learning Domain 37 ("People with Disabilities"). Defendants CITY OF

19  ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, and DOE 11 to 20 failed

20  adequately to train officers under their command in critical areas, including, for example:

21          a.    how and when to call for the assistance of officers or professionals with

22                specialized training in dealing with mental illness, when possible;

23          b.    how to approach persons suffering from mental disability or substance

24                impairment;

25          c.    how to speak to persons suffering from a mental disability or substance

26                impairment;

27          d.    how to interact with persons suffering from mental disability or substance

28                impairment (including using appropriate body language and tone of voice);

16

e.    how to respect the personal space of persons suffering from mental disability or substance impairment;

f.    how reasonably to accommodate the disabilities of persons suffering from mental disability or substance impairment; and

g.    how to de-escalate, without use of force, incidents involving persons suffering from mental disability or substance impairment.

129.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, and DOE 11 to 20's failure adequately to train, supervise, or discipline police officers under their command, including Defendants BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, and was a moving force behind the use of unreasonable and excessive force against persons with mental disabilities or substance impairment, including CHARLES CHIVRELL.

## Plaintiffs' Relationships with Charles Chivrell

130.    Each Plaintiff was one of a total of six children born to CHARLES CHIVRELL.

131.    Each Plaintiff shared a personal and private family (father-child specifically) relationship with CHARLES CHIVRELL.

132.    Each Plaintiff shared a close relationship and special bond with their father CHARLES CHIVRELL including expressive association, which included deep attachments, commitments, and distinctively personal aspects of their lives that was typical of a close familial relationship, prior to his death.

133.    Each Plaintiff communicated with CHARLES CHIVRELL as a significant and necessary component of each of their lives prior to his death.

134.    CHARLES CHIVRELL held out each Plaintiff as his child and participated in child-rearing and personal and private associations with each Plaintiff prior to his death, including but not limited to frequent phone calls, visits, and attendance at important events.

135.    CHARLES CHIVRELL had a positive and cooperative relationship with the guardian of each of his children, and worked with the guardians to keep an active role in each of the Plaintiff's lives.

17

136. Prior to CHARLES CHIVRELL's death, each Plaintiff received love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance, gifts, and financial support from CHARLES CHIVRELL.

137. Prior to CHARLES CHIVRELL's death, each Plaintiff shared a special community of thoughts, experiences, beliefs and distinctively personal aspects of each of their lives with CHARLES CHIVRELL.

138. All Plaintiffs are decedent CHARLES CHIVRELL's children pursuant to California Civil Code Section 377.60.

139. CHARLES CHIVRELL paid court ordered child support for each Plaintiff prior to his death, as well as giving each of them gifts and additional funds as he could.

## FIRST CLAIM

**Unwarranted Interference with Familial Association**

**(U.S. Const., Amend. I; 42 U.S.C. § 1983)**

140. All Plaintiffs assert this Claim against Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO and DOES 1-20.

141. The allegations of the proceeding paragraphs 1 to 125 are realleged and incorporated, to the extent relevant as if fully set forth in this claim.

142. Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, EVAN BEECHEL and DOE 1 to 20 caused the termination of and interference with each Plaintiff's familial relationship with CHARLES CHIVRELL, in the violation of constitutional rights protected by the First Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution.

143. Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, EVAN BEECHEL and DOE 1 to 20's actions and inactions were motivated by evil

1    motive or intent, involved reckless, deliberate, or callous indifference to constitutional rights, or

2    were wantonly or oppressively done.

3    144.    Defendants BRIAN HOFFMAN, JOSEPH RODES, MICHAEL GRIFFIN, MOISES

4    CORNEJO MERCADO, EVAN BEECHEL each had the actual opportunity to deliberate prior to

5    taking action against CHARLES CHIVRELL.

6    145.    All Plaintiffs were injured as a direct and proximate result of Defendants CITY OF

7    ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN,

8    JOSEPH RODES, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, EVAN BEECHEL

9    and DOE 1 to 20's actions and inactions, entitling them to receive compensatory damages against

10   Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN,

11   BRIAN HOFFMAN, JOSEPH RODES, MICHAEL GRIFFIN, MOISES CORNEJO

12   MERCADO, EVAN BEECHEL and DOE 1 to 20; and punitive damages against Defendants

13   BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, MOISES CORNEJO MERCADO,

14   EVAN BEECHEL, MICHAEL GRIFFIN, and DOE 11 to 20.

15   WHEREFORE, Plaintiffs pray for relief as hereunder appears.

16

17                         **SECOND CLAIM**

18                **Unwarranted Interference with Familial Association**

19                  **(U.S. Const., Amend. XIV; 42 U.S.C. § 1983)**

20   146.    All Plaintiffs assert this Claim against Defendants CITY OF ARCATA, ARCATA

21   POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN

22   BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 20.

23   147.    The allegations of the preceding paragraphs 1 to 124 are realleged and incorporated, to the

24   extent relevant and as if fully set forth in this Claim.

25   148.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN

26   AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN,

27   MOISES CORNEJO MERCADO, and DOE 1 to 20 caused the termination of and interference

28   with each Plaintiff's familial relationship with CHARLES CHIVRELL, in the violation of

                                    19

1    constitutional liberty rights protected by the Fourteenth Amendment to the U.S. Constitution.

2    149.    Defendants BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN

3    BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 20's actions

4    and inactions were motivated by evil motive or intent, involved reckless or callous indifference to

5    constitutional rights, or were wantonly or oppressively done.

6    150.    All Plaintiffs were injured as a direct and proximate result of Defendants CITY OF

7    ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN,

8    JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO,

9    and DOE 1 to 20's actions and inactions, entitling them to receive compensatory damages against

10   Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN,

11   BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES

12   CORNEJO MERCADO, and DOE 1 to 20; and punitive damages against Defendants BRIAN

13   AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN,

14   MOISES CORNEJO MERCADO, and DOE 1 to 10.

15       WHEREFORE, All Plaintiffs pray for relief as hereunder appears.

16

17                          **THIRD CLAIM**

18                          **Wrongful Death**

19                  **(Cal. Code Civ. Proc. § 377.60)**

20   151.    All Plaintiffs assert this Claim against Defendants CITY OF ARCATA, ARCATA

21   POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES,

22   MICHAEL GRIFFIN, EVAN BEECHEL, MOISES CORNEJO MERCADO and DOE 1 to 20.

23   152.    The allegations of the preceding paragraphs 1 to 140 are realleged and incorporated, to the

24   extent relevant and as if fully set forth in this Claim.

25   153.    Defendants BRIAN HOFFMAN and MICHAEL GRIFFIN caused CHARLES

26   CHIVRELL's death by wrongful act and neglect, including by employing improper tactical

27   conduct and decisions preceding the use of excessive force against CHARLES CHIVRELL; by

28   failing reasonably to accommodate CHARLES CHIVRELL's disabilities; and by the using of

                                    20

excessive force against CHARLES CHIVRELL in violation of Defendant ARCATA POLICE DEPARTMENT and CALIFORNIA HIGHWAY PATROL's handbooks, and California Penal Code Section 835a.

154.    Defendants JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, and MOISES CORNEJO MERCADO caused CHARLES CHIVRELL's death by wrongful act and neglect, including by employing improper tactical conduct and decisions preceding the use of excessive force against CHARLES CHIVRELL; by failing reasonably to accommodate CHARLES CHIVRELL's disabilities; and by failing to intercede in, integrally participating in, and/or aiding and abetting Defendant BRIAN HOFFMAN's use of excessive force against CHARLES CHIVRELL in violation of Defendant ARCATA POLICE DEPARTMENT and CALIFORNIA HIGHWAY PATROL's handbooks and California Penal Code Section 835a.

155.    Defendants DOE 1 to 10 caused CHARLES CHIVRELL's death by wrongful act and neglect, including by employing improper tactical conduct and decisions preceding the use of excessive force against CHARLES CHIVRELL; and by failing reasonably to accommodate CHARLES CHIVRELL's disability.

156.    Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, and DOE 11 to 20 caused CHARLES CHIVRELL's death by wrongful act and neglect, including by maintaining policies or customs of action and inaction and unconstitutional policies.

157.    Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, and DOE 1 to 20.

158.    Defendants BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

159.    CHARLES CHIVRELL died as a direct and proximate result of Defendants CITY OF

21

1  ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN,

2  JOSEPH RODES, EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO,

3  and DOE 1 to 20's actions and inactions, entitling all Plaintiffs to receive wrongful death

4  damages and expenses against Defendants CITY OF ARCATA, ARCATA POLICE

5  DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN

6  BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 20; and

7  punitive damages against Defendants BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES,

8  EVAN BEECHEL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 20.

9  160.      WHEREFORE, Plaintiffs pray for relief as hereunder appears.

10

11  **PRAYER FOR RELIEF**

12  WHEREFORE, Plaintiffs seek Judgment as follows:

13  1.      For an award of compensatory, general, special, and nominal damages (including survival,

14  loss of life, and wrongful death damages under federal and state law) against Defendants CITY OF

15  ARCATA, ARCATA POLICE DEPARTMENT, EVAN BEECHEL, MOISES CORNEJO MERCADO,

16  BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, MICHAEL GRIFFIN, and DOE 1 to 20, in

17  excess of $40,000,000, according to proof at trial;

18  2.      For an award of exemplary/punitive damages against Defendants BRIAN AHEARN,

19  BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MOISES CORNEJO MERCADO,

20  MICHAEL GRIFFIN, and DOE 1 to 20, in an amount sufficient to deter and to make an example of

21  them, because their actions and inactions were motivated by evil motive or intent, or involved reckless or

22  callous indifference to constitutional rights; and/or constituted oppression, fraud, and/or malice resulting

23  in great harm;

24  3.      For an award of actual damages, treble damages, punitive damages, civil penalties, and

25  any other available relief Defendants CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN

26  AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, MOISES CORNEJO

27  MERCADO, MICHAEL GRIFFIN, pursuant to Cal. Civ. Code §§ 52, 52.1, and any other statute as may

28  be applicable (except that no punitive damages are sought against Defendants CITY OF ARCATA,

22

1    ARCATA POLICE DEPARTMENT pursuant to Cal. Civ. Code § 818);

2           5.      For interest;

3           6.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29

4    U.S.C. § 794, 42 U.S.C. § 12205, Cal. Civ. Code § 52.1, Cal. Code Civ. Proc. § 1021.5, and any other

5    statute as may be applicable; and

6           7.      For an award of any other further relief, as the Court deems fair, just, and equitable.

7

8    Dated: October 14, 2022                          Respectfully Submitted,

9

10                                                    By: _____

11                                                         Heidi Holmquist Wells

12                                                         Attorneys for Plaintiffs
                                                          A.C., C.C., D.C., and T.C.

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*A.C. et al  v. City of Arcata et al.*, United States District Court, Northern District of California, Case No. 4:22-cv-04804-HSG

1

**JURY TRIAL DEMAND**

2

A JURY TRIAL IS DEMANDED on behalf of all Plaintiffs.

3

4

5

Dated: October 14, 2022

Respectfully Submitted,

6

7

By: _____

8

Heidi Holmquist Wells

9

Attorneys for Plaintiffs
A.C., C.C., D.C., and T.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28